UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| HORACE JENKINS, | ) |
|        Plaintiff, | ) |
| | ) No.: |
| vs. | ) |
| | ) Jury Demand |
| MILLER INDUSTRIES, INC., | ) |
|        Defendant. | ) |

## **COMPLAINT**

Pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. (Title VII), Plaintiff files this lawsuit against Defendant and alleges the following:

### **Parties and Jurisdiction**

1. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

2. Defendant is a Tennessee corporation with its principal address at 8503 Hilltop Drive, Ooltewah, Tennessee, 37363. Its registered agent for service of process in Tennessee is National Registered Agents, Inc., 300 Montvue Road, Knoxville, Tennessee, 37919.

3. Defendant manufactures wreckers and other towing and recovery equipment, and distributes its products throughout the United States.

4. At all times material, Defendant had more than 15 employees.

5. Plaintiff is a 52-year-old Black male who resides in Chattanooga, Tennessee.

### **Facts**

6. Plaintiff has been employed by Defendant at its plant in Ooltewah, Tennessee since approximately 2003. Plaintiff works in the metal finishing department.

7. Out of approximately 1,000 employees at the Ooltewah plant, Plaintiff is one of only about 12 Black employees who work there (approximately 1% of employees are Black).

8. Although Plaintiff has been employed by Defendant for almost 20 years and has always received good performance evaluations, in recent years he has been subjected to ongoing racial harassment and discrimination that has become unbearable.

9. For example, in around 2015, Plaintiff was wearing a white hoodie while at work. A white security guard at the plant named Mike Hatfield said to Plaintiff, "I've got a white hood like that at home." When Mr. Hatfield made this statement to Plaintiff, Hatfield was standing and talking with the assistant plant manager named Todd, who witnessed the statement and took no corrective action.

10. In around 2016, a white employee named Kevin came to Plaintiff's department to get some parts from Plaintiff. For no reason at all, Kevin kicked Plaintiff in his shin, causing Plaintiff severe pain. Plaintiff reported this incident to the head of human resources, Judy Hoover, and she said she would talk with Kevin about it. Plaintiff later learned from Ms. Hoover that Kevin admitted attacking Plaintiff, but no corrective action was taken and Keven remained employed at the plant.

11. In around 2018, a white employee who was sitting at a table with other white employees threw a hard rubber ball at Plaintiff and hit him in the back of his head. Later that day when Plaintiff was standing in line to leave work, that same employee threw a metal washer at Plaintiff, striking his foot. Plaintiff reported these incidents to human resources, and Ms. Hoover did fire that employee.

12. In mid-January of 2021, Plaintiff found a large metal sign on his work desk. The words "Spit and Shine Department" were engraved on the sign, and it had the Miller Industries logo engraved on it. This sign was manufactured at the Ooltewah plant with plant equipment,

and its manufacture would have required the approval of a supervisor at the plant. After Plaintiff threw away the sign in a dumpster, another employee pulled it out of the dumpster and showed it around to other employees.

13. Plaintiff reported the sign incident to his supervisors and to Kevin Thompson in human resources. Mr. Thompson later told Plaintiff that he found out that an employee named Toby Lance made the sign and put it on Plaintiff's desk. Neither Mr. Thompson nor anyone else in human resources took corrective action in response to the incident, and Mr. Lance continues to work at the Ooltewah plant. Plaintiff kept a photograph of the sign.

14. On May 4, 2021, a forklift driver named Randy Smith approached Plaintiff while he was working and said to Plaintiff, "You're working hard like a slave." Mr. Smith then told another employee that "I was saying to Horace how ya'll have got him working like a slave." Plaintiff reported this incident to his supervisors, and later that day Mr. Smith came back to Plaintiff's area and said to some other employees, "I don't know how ya'll work in here with him" (referring to Plaintiff). Plaintiff reported these incidents to Kevin Thompson in human resources, and Mr. Thompson said that they would investigate it and get back with Plaintiff.

15. On May 10, 2021, Plaintiff was called into a meeting with the chief manufacturing officer, Jamison Linden; the human resources director, Judy Hoover; and Kevin Thompson. During the meeting, Mr. Linden encouraged Plaintiff to quit his job with Defendant, saying to Plaintiff, "I don't think you're happy here" and "I just don't think you want to be here." Mr. Linden also told Plaintiff that "I can't control these people," referring to the ones who were harassing Plaintiff, and said "I can't tell people what to say or do to you," or words to that effect.

16. During the week of October 18, 2021, Plaintiff was called to the human resources office for a meeting with Kevin Thompson and another human resources employee. They proceeded to tell Plaintiff that a white employee named Karen, who parked near Plaintiff in

Defendant's parking lot, reported to them that she was afraid to get out of the car when Plaintiff was in the parking lot. They admitted that Karen had not alleged that Plaintiff did anything wrong or anything to make her afraid to get out of her car with Plaintiff in the parking lot.

17. On October 22, 2021, the security guard who made the comment about the white hood, Mike Hatfield, approached Plaintiff and escorted him to the human resources office for another meeting with human resources director Judy Hoover and another person. They demanded that Plaintiff give them any recordings or notes that he had of their recent meetings him. They also suggested that Plaintiff undergo counseling.

18. In response to Plaintiff's complaints about the harassment described above, Plaintiff's work hours and wages have been reduced, and Plaintiff is afraid that he is going to be terminated.

## Violations of Title VII—Racial Discrimination and Retaliation

19. Pursuant to Fed. R. Civ. P. 10(c), Plaintiff adopts by reference the allegations set forth in paragraphs 1-18 above.

20. The racial harassment described above, which Defendant participated in and for which Defendant failed to take corrective action, constitutes discrimination in violation of Title VII, and specifically 42 U.S.C. § 2000e-2(a).

21. By reducing Plaintiff's work hours and wages and encouraging Plaintiff to quit his job, Defendant discriminated against Plaintiff on the basis of his race in violation of Title VII, and specifically 42 U.S.C. § 2000e-2(a). Plaintiff's race was a motivating and determinative factor in the reduction of his work hours and wages.

22. By reducing Plaintiff's work hours and wages and encouraging Plaintiff to quit his job, Defendant retaliated against Plaintiff and subjected him to adverse employment action because he opposed an unlawful practice, in violation of Title VII, and specifically 42 U.S.C. §

2000e-3(a). Defendant's adverse employment action would not have occurred if Plaintiff had not opposed the unlawful employment practices as described above.

23. As a result of Defendant's violations of Title VII, Plaintiff sustained and is entitled to recover substantial economic damages, including back pay, front pay, and loss of benefits.

24. As a result of Defendant's violations of Title VII, Plaintiff sustained and is entitled to recover compensatory damages, including damages for emotional distress, mental anguish, pain and suffering, loss of enjoyment of life, and harm to reputation.

25. Defendant's violations of Title VII were malicious and intentional, or in reckless disregard for Plaintiff's legal rights, entitling Plaintiff to punitive damages.

26. Plaintiff is entitled to an award of statutory attorneys' fees and costs pursuant to Title VII.

## Exhaustion of Administrative Remedies

27. On November 1, 2021, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) alleging race discrimination and retaliation.

28. On May 3, 2022, the EEOC issued Plaintiff a Notice of Right to Sue.

## Prayer for Relief

WHEREFORE, Plaintiff prays for a judgment against Defendant for damages that include the following:

(a) back pay;

(b) front pay;

(c) damages for loss of benefits;

(d) compensatory damages, including damages for emotional distress, mental anguish,

pain and suffering, loss of enjoyment of life, and harm to reputation;

    (e) punitive damages;

    (f) prejudgment interest;

    (g) statutory attorney's fees;

    (h) the costs and expenses of this action; and

    (i) all other general legal and equitable relief to which he may be entitled.

Plaintiff further demands a jury to try the issues when joined.

Respectfully submitted,

/s/ R. Scott Jackson, Jr.
R. Scott Jackson, Jr. (TN 013839)
4525 Harding Road, Suite 200
Nashville, TN 37205
(615) 313-8188
(615) 313-8702 (facsimile)
rsjackson@rsjacksonlaw.com

/s/ John McCown
John McCown (GA 486002)
Warren & Griffin, P.C.
300 West Emery Street, Suite 108
Dalton, GA 30720
(706) 529-4878
(706) 529-3890 (facsimile)
john.mccown@warrenandgriffin.com

Attorneys for Plaintiff